IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROLAND CRISTOBAL SALAZAR,      §
TDCJ-CID NO. 1442303,          §
                               §
            Petitioner,        §
                               §
v.                             §      CIVIL ACTION NO. H-10-2396
                               §         (consolidated with)
RICK THALER, Director, Texas   §      CIVIL ACTION NO. H-10-1775
Department of Criminal Justice,§
Correctional Institutions,     §
Division,                      §
                               §
            Respondent.        §

## MEMORANDUM OPINION AND ORDER

Roland Cristobal Salazar, an inmate of the Texas Department of
Criminal Justice - Correctional Institutions Division (TDCJ-CID),
filed federal Petitions for a Writ of Habeas Corpus by a Person in
State Custody (Docket Entry No. 1 in C.A. H-10-2396; Docket Entry
No. 1 in C.A. H-10-1775) under 28 U.S.C. § 2254 challenging a state
court conviction in the United States District Court for the
Eastern District of Texas. Salazar v. Thaler, No. 5:10cv-0094. He
also filed a similar petition in the Southern District. Salazar v.
Thaler, No. H-10-1775. The Eastern District transferred
No. 5:10cv-0094 to the Southern District (Docket Entry No. 4), and
respondent Rick Thaler was ordered to file an answer (Docket Entry
No. 11). This court subsequently granted Respondent Thaler's
Motion to Consolidate the two habeas actions and the Respondent has

filed a Motion for Summary Judgment (Docket Entry No. 40), supported by state appeal and habeas records, addressing the claims raised in the consolidated federal habeas petitions. Having considered the respondent's motion, the records, and the petitioner's response (Docket Entry No. 68), the court will grant the motion.

## I.  Procedural History

A jury convicted Salazar of capital murder, and the court sentenced him to life confinement in the TDCJ-CID. State v. Salazar, No. 1118235 (263rd Dist. Ct., Harris County, Tex., June 8, 2007). Salazar filed an appeal contending that the evidence presented at trial was legally and factually insufficient to prove that he smothered the complainant; that he sexually assaulted the complainant; that he kidnaped the complainant; and that he committed capital murder of the complainant. The Court of Appeals for the First District of Texas affirmed the trial court's judgment. Salazar v. State, No. 1-07-0507-CR, 2009 WL 566443 (Tex. App. -- Houston [1st Dist.] Mar. 5, 2009). The Texas Court of Criminal Appeals granted Salazar an extension of time in which to file a petition for discretionary review (PDR); however, no PDR was filed. See Docket Entry No. 40, Exhibit A.

On January 14, 2010, Salazar filed a state application for writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure. The Court of Criminal Appeals denied the

-2-

application without a written order on findings of the trial court
without a hearing.  Ex parte Salazar, No. 73,718-01 (Tex. Crim.
App. Apr. 14, 2010).  Salazar filed the instant habeas action on
May 6, 2010.  See Sonnier v. Johnson, 161 F.3d 941, 945 (5th Cir.
1998); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998).

## II.  **Facts Established at Trial**

The First Court of Appeals set forth a summary of the evidence
in a Memorandum and Opinion as follows:

> Appellant and the complainant, Norma Torres, were
> residents at an apartment complex located at 17103
> Imperial Valley Drive in Houston, Texas. At approximately
> 6:00 a.m on July 19, 1990, the complainant accompanied
> her common-law husband, George Davila to a restaurant to
> meet her father, who supervised Davila on a construction
> work site. The complainant parted company with Davila and
> her father to return to her residence at the apartment
> complex. Appellant took his co-habitant, Annette Andrade,
> to work at approximately 7:00 a.m. on July 19, 1990 and
> subsequently returned to his residence at the apartment
> complex.
>
> Silvia Hernandez, a resident of the complex living
> in an apartment immediately below the complainant's
> residence, awoke at approximately 7:00 a.m.  As she
> watched her sister leave the apartment complex to go to
> work, she saw appellant standing by the apartment
> swimming pool.  At approximately 7:45 a.m., Hernandez
> returned to her apartment and went back to bed.  At
> approximately 8:00 a.m., Hernandez heard noises
> resembling a fight coming from the complainant's
> apartment.  The noises continued for five to ten minutes.
> She then heard "somebody [try] to scream and it's like
> something fell on the floor real hard and it's no more
> noise." Hernandez later identified appellant to police.
>
> Davila left work and went to his mother's residence
> at 5:00 p.m., where he waited for the complainant to pick
> him up. When the complainant did not come, Davila took a
> taxicab to his residence at the apartment complex. When

Davila arrived at the apartment he shared with the complainant, the door was unlocked.  Davila entered the apartment and found it disheveled.  Davila entered the bedroom and found the complainant's body underneath a pile of clothes.  The complainant was clothed only in a shirt and had a pillow over her head, a shirt wrapped around her face, and a sock stuffed in her mouth. The complainant's wrists and right ankle were bound by ligatures made of tube socks.  After attempting to revive the complainant, Davila left the apartment and ran to the apartment complex office to contact the police.

Houston Police Department ("HPD") crime scene investigator James Kay walked through the complainant's apartment on July 19, 1990 and observed the complainant while her body was still in the apartment.  Kay noticed that the complainant's patio door located to the left of the front door was ajar when he entered the complainant's apartment.  Kay saw that the complainant's bathroom had three towels on the floor, which he assumed were wet because the complainant had taken a shower just prior to her death.  Kay observed several hair products and a blow dryer in the bathroom that Kay assumed the complainant used to prepare herself to go out for the day.  He noticed a flesh wound on the complainant's hip, and saw that the complainant had a foaming mouth indicative of pulmonary edema, a sign of suffocation trauma.  In addition to those injuries, the complainant's eyes had signs of hemorrhaging indicative of suffocation trauma. The complainant's mouth had abrasions and contusions indicative of death by asphyxia, possibly caused by the pillow found over the complainant's face.

The complainant's body was autopsied by the Harris County Medical Examiner's Office.  The autopsy report indicated that the complainant died from causes related to asphyxiation.  The report also indicated that there was semen present in the complainant's vagina and rectum.  Kay found a semen-stained fitted bed sheet, a semen-stained blue striped towel, and a semen-stained peach colored rag in the complainant's apartment.  Kay also found a bedspread and a pastel shirt in the complainant's apartment that were soiled with blood stains and other DNA material.

Police questioned appellant after Sylvia Hernandez identified him to HPD homicide investigator Sergeant C.T. Mosqueda.  Police also obtained blood and saliva samples

from appellant and Davila.  The police shipped all semen evidence, blood stains and blood samples and other DNA materials to the genetics laboratory at Baylor College of Medicine in Houston, Texas.  The initial tests done in 1990, using the materials found by police in the complainant's apartment and obtained from the complainant's body, appellant, and Davila produced inconclusive results.  Due to the inconclusive results, the case was closed.

Kay stored all the materials he took from the complainant's apartment and the "stick portions" of the swabs taken from the complainant's body in the property room of the Houston Police Department and personally tagged the evidence.  Grace Das, an HPD officer working as a crime lab technician in 1990, took blood and saliva samples obtained from appellant and Davila and soft portions of the swabs taken from the complainant's vaginal and rectal areas and transferred them to a criminologist working for the HPD crime lab.

In 2004, Sergeant Eric Mehl of the HPD homicide "cold case" squad reopened the case.  Mehl retrieved the materials stored by Kay in the HPD property room.  Mehl also retrieved the portions of the swabs taken from the complainant's body stored in the crime lab.  Using the stored samples from appellant, Davila, and the complainant, Mehl submitted the samples to Orchid Cellmark laboratory in Dallas, Texas.  Using newer technology and the never tested "stick portions" of the swabs taken from the complainant's body, the laboratory isolated DNA on a swab taken from the complainant's body consistent with appellant's DNA.  Mehl sought and obtained an arrest warrant for appellant based on the new results.  Appellant was arrested on June 29, 2005 at a city park across the street from Houston City Hall.  Mehl obtained a new buccal sample from appellant and submitted the sample for additional testing at the Orchid CellMark laboratory.  The test results again indicated the presence of appellant's DNA when compared with a swab taken from the complainant's rectal area.

Appellant was indicted for capital murder for intentionally and knowingly causing the death of the complainant in the course of committing aggravated sexual assault and kidnaping.  Appellant testified at trial that he was not involved in the complainant's death.  He testified that he did not know the complainant, but he

-5-

had seen her at the apartment complex, and he thought the complainant "was very beautiful."  He testified that he knew that the complainant lived in an apartment near the pool in the complex.  He also testified that he was at lunch with his mother at the time of the complainant's death.  He disputed the State's assertions and police testimony that he lived with Annette Andrade at the apartment complex at the time of the complainant's death and stated that he lived alone at the complex.  When asked on cross-examination to explain the presence of his semen on the complainant's body, appellant explained that the Texas Department of Corrections took his semen from a tissue he kept in a plastic bag to give to his parents. HPD Sergeant John W. Belk testified that he interviewed appellant after his arrest on June 29, 2005 and said that appellant told him that "[appellant] would lie if it were to protect a family member or to protect himself."

Salazar v. State, 2009 WL 566443, **1-3 (Tex. App. -- Houston [1st Dist.], 2009).

### III.  **Salazar's Grounds for Relief**

Salazar's pleadings are difficult to comprehend.  His claims are scattered and are difficult to interpret.  Liberally construed, Salazar asserts the following grounds for relief in his two habeas petitions (See H-10-1775, Docket Entry No. 1, at 7-8; H-10-2396, Docket Entry No. 1, at 7-8.):

1.   Salazar is actually innocent of capital murder.

2.   Salazar was denied the right to effective assistance of counsel because his attorney failed to present witnesses who would have provided alibi evidence.

3.   The indictment was defective because:

   a.   kidnaping was added; and

   b.   the language "used or exhibited an unknown weapon" was added.

-6-

4.   False DNA evidence was submitted at trial.

5.   Salazar was falsely imprisoned before the punishment phase of the trial.

## IV.  Respondent's Arguments

The respondent argues that Salazar has not sufficiently exhausted Claims 1 and 5 and that he is procedurally barred from presenting them.  The respondent argues that Salazar's three exhausted claims (Claims 2, 3, and 4) are conclusory and not supported by any showing that the alleged errors were constitutionally deficient.

The respondent contends that Salazar's alibi witness argument (Claim 2) is not cognizable on habeas review because it is based on Texas law.  The respondent also notes that the state habeas court found that the claim was procedurally barred because it was not raised on direct appeal.

With regard to Salazar's defective indictment claim (Claim 3), the respondent argues that it is based on a violation of state law and is not cognizable in a federal habeas action.  The respondent also points out that the state habeas court found that the claim was procedurally barred because it was not brought up on direct appeal.

The respondent observes that Salazar's DNA challenge (Claim 4) concerns state law and, therefore, is not cognizable in a federal habeas corpus review.  The respondent also contends that the admission of the DNA evidence did not violate state law.

-7-

## V.  **Standard of Review and Applicable Laws**

Salazar's petition for a writ of habeas corpus is subject to review under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; Woods v. Cockrell, 307 F.3d 353, 356 (5th Cir. 2002); Nobles v. Johnson, 127 F.3d 409, 413 (5th Cir. 1997), citing Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997).  A federal habeas petitioner challenging a state court decision is not entitled to relief unless the state-court judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provisions "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 122 S.Ct. 1843, 1849 (2002), citing Williams v. Taylor, 120 S.Ct. 1495, 1518 (2000).  Habeas relief should only be granted where the state-court decision is both incorrect and objectively unreasonable. Martin v. Cain, 246 F.3d 471, 476 (5th Cir. 2001), citing Williams, at 1521.

-8-

## VI.  Analysis

### A.  Unexhausted Claims - Procedural Bar

Under 28 U.S.C. § 2254 a habeas petitioner must exhaust available state remedies before seeking relief in the federal courts.  See Nobles v. Johnson, 127 F.3d 409, 419-420 (5th Cir. 1997).  To exhaust his state remedies the petitioner must fairly present the substance of his claims to the state courts, and the state's highest criminal court must have an opportunity to review the merits of the claims.  Id. citing Picard v. Connor, 92 S.Ct. 509, 512-13 (1971); Myers v. Collins, 919 F.2d 1074, 1076 (5th Cir. 1990).  In Texas a petitioner satisfies this requirement by properly filing a PDR with the Texas Court of Criminal Appeals or, in a post-conviction matter, by filing a state application for a writ of habeas corpus in state district court, under TEX. CODE CRIM. PRO. art. 11.07, which forwards the application to the Court of Criminal Appeals.  See Richardson v. Procunier, 762 F.2d 429, 431-32 (5th Cir. 1985).  The fact that an appeal has "been through" the state-court system is not enough to satisfy the exhaustion requirement; the highest court must have a reasonable opportunity to consider the merits of each of the claims presented in a federal habeas petition.  Picard, 92 S.Ct. at 512.

Although Salazar filed a direct appeal that was affirmed by the First Court of Appeals, no PDR was filed, and the Texas Court of Criminal Appeals was not given an opportunity to review his claims.  Consequently, the only grounds for relief that may have

-9-

been exhausted were those which Salazar presented in his state application for a writ of habeas corpus.

This court has reviewed Salazar's state habeas application (Docket Entry No. 23-3 at 7-24) and examined what are purported to be his state habeas claims.  Id. at 12-16.  Like his federal petition, Salazar's state application is confusing and difficult to decipher.  The following is a list of grounds that Salazar appears to have asserted before the Court of Criminal Appeals:

1.   Denial of a trial by jury regarding punishment (Id. at 12.);

2.   Denial of right to call alibi witnesses after having informed his defense counsel of their existence (Id. at 13.);

3.   Contaminated DNA used as false evidence (Id. at 14.);

4.   Wrongful addition of charges of kidnaping and exhibiting a weapon (Id. at 15.); and

5.   Denial of court-appointed attorney (Id. at 16.).

Having closely examined the state habeas application, it is clear that Salazar did not raise his actual innocence claim in his state habeas application.  Therefore, his first claim has not been exhausted.  Salazar does mention being "falsely arrested" and being "mistreatedly" held in solitary confinement for two years while the state district court reset his trial date.  Id. at 12.  However, Salazar only raises these allegations under the ground that he was denied a jury trial and presents no argument how these actions entitle him to relief.  In responding to Salazar's art. 11.07

-10-

application, the state failed to recognize Salazar's confinement
allegation as a separate ground.  Such oversight is understandable
given Salazar's complete failure to assert any argument as to how
his rights were affected.

A federal habeas petitioner seeking to challenge a state
criminal conviction must exhaust all of his claims in the state
courts.  Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998).
This requires that the state courts be given a fair opportunity to
consider those claims.  Mercadel v. Cain, 179 F.3d 271, 275 (5th
Cir. 1999).  Although a pro se petitioner such as Salazar is
entitled to liberal construction of his pleadings, he must still
brief the issues.  Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir.
1995).  A fair reading of the pleadings indicates that Salazar's
false imprisonment claim was not presented in the Texas state
courts and that they did not have a fair opportunity to consider
it.  See Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997).
Therefore, Salazar failed to exhaust his claims of actual innocence
and false imprisonment.

When a petitioner challenging a state-court conviction in a
federal habeas proceeding has failed to exhaust his state-court
remedies, the action may be dismissed, without prejudice to later
reconsideration, so that the state courts may have an opportunity
to review his claims.  See Alexander v. Johnson, 163 F.3d 906, 908
(5th Cir. 1998).  However, this court will not order a petitioner

to return to the state courts if filing a state habeas application would be futile.  See Graham v. Collins, 94 F.3d 958, 969 (5th Cir. 1996).  Instead, the court will dismiss a claim if it is subject to a procedural bar.  Woodford v. Ngo, 126 S.Ct. 2378 (2006); Cotton v. Cockrell, 343 F.3d 746, 754 (5th Cir. 2003).

This court would be precluded from reviewing the merits of an unexhausted claim if the petitioner is barred from now presenting the claim for consideration by the state courts because the claim would be subject to a state-law procedural default that would prevent the state court from reaching the merits of a federal claim.  Ylst v. Nunnemaker, 111 S.Ct. 2590, 2593 (1991).  A procedural default occurs whenever a petitioner does not exhaust available state remedies regarding some or all of his claims, and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Nobles v. Johnson, 127 F.3d 409, 423 (5th Cir. 1997), quoting Coleman v. Thompson, 111 S.Ct. 2546, 2557 n.1 (1991).  Under Texas law a state court may not consider the merits of a state habeas application if it has been filed after a final ruling has been entered in a previous habeas action challenging the same conviction.  TEX. CODE CRIM. PROC. Ann. art 11.07 § 4.  Federal courts have consistently held that Texas' abuse-of-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural default ruling.  Henderson v.

-12-

Cockrell, 333 F.3d 592, 605 (5th Cir. 2003); Horsley v. Johnson, 197 F.3d 134, 137 (5th Cir. 1999); Matchett v. Dretke, 380 F.3d 844, 848 (5th Cir. 2004).

The merits of Salazar's procedurally defaulted claims may only be reviewed if he can demonstrate either:   (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice.   Pitts v. Anderson, 122 F.3d 275, 279 (5th Cir. 1997), citing Coleman, 111 S.Ct. at 2564; Morris v. Dretke, 413 F.3d 484, 491-92 (5th Cir. 2005).  To show "cause," Salazar must prove that an external factor prevented him from complying with the state procedural rule.  Moore v. Quarterman, 534 F.3d 454, 463 (5th Cir. 2008), citing  United States v. Frady, 102 S.Ct. 1584 (1982).   To show "actual prejudice," he must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Moore, quoting Frady, 102 S.Ct. at 1596.

Salazar fails to establish cause for his procedural default; he makes no allegation that he was prevented from complying with the state procedural rules other than complaining that he did not have an attorney.  (See Docket Entry No. 23-3 at 24; Docket Entry No. 68 at 5.)  His status as a pro se habeas petitioner does not excuse his failure to comply with the state's procedures.  Saahir

v. Collins, 956 F.2d 115, 118 (5th Cir. 1992).  Having failed to establish cause, Salazar cannot prevail using the "cause and prejudice" exception to the procedural bar.  Ruiz v. Quarterman, 460 F.3d 638, 644 (5th Cir. 2006).

The other exception, "fundamental miscarriage of justice," requires the petitioner to show that he is actually innocent of the crime for which he was convicted.  Sawyer v. Whitley, 112 S.Ct. 2514, 2519 (1992); Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999).  To accomplish this he must present reliable evidence, which, if accepted by a jury, would result in an acquittal.  Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001).  Examples of such evidence would include "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence."  Fairman, at 644.  The burden is on the petitioner to establish that it is "'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  Bosley v. Cain, 409 F.3d 657, 664 (5th Cir. 2005), quoting Schlup v. Delo, 115 S.Ct. 851, 867 (1995).

Salazar's pleadings, including his response to the Motion for Summary Judgment (Docket Entry No. 68), do not address the issue of procedural bar, and there is no indication of any evidence that he is actually innocent of the offense for which he was convicted.  Moreover, claims of actual innocence are generally not cognizable on federal habeas review.  Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003).  Consequently, there is no showing of a

-14-

fundamental miscarriage of justice, and Salazar's first federal habeas claim regarding actual innocence and his last claim regarding false imprisonment are procedurally barred. Bosley v. Cain, 409 F.3d at 664.

## B.   Alibi Witnesses

In the second ground for relief listed above, Salazar alleges that he informed his attorney about three alibi witnesses. (See Docket Entry No. 1 at 7 ["Ground One"].) Although Salazar's allegations are unclear, he does indicate that witnesses were not called despite his request to his attorney. Salazar made a similar allegation in his state application for a writ of habeas corpus. (Docket Entry No. 23-3 at 13) The Harris County District Attorney, responding to the state habeas application, interpreted the argument as a general denial of the right to present alibi witnesses. (Docket Entry No. 23-3 at 29) Consequently, the State argued, and the state habeas trial court found, that Salazar was procedurally barred from presenting this argument because it was not raised on direct appeal. (Docket Entry No. 23-3 at 39) The state court also found that, alternatively, the argument had no validity under state law because Salazar failed to identify his alleged witnesses, show their availability to testify, and failed to show how their purported testimony would have helped his defense. Id. at 39, citing King v. State, 649 S.W.2d 42 (Tex. Crim. App. 1983). The Court of Criminal Appeals adopted the trial

-15-

court's finding in denying the state habeas application.  (Docket Entry No. 23-3 at 2)

In accordance with the state courts' findings, the respondent contends that Salazar's alibi-witnesses argument relies on state law and should be dismissed because it is not cognizable on federal habeas review.  (Docket Entry No. 40 at 16)  The respondent also contends that if Salazar has presented a due process claim, he has failed to show a "substantial and injurious effect or influence" on the outcome of the case that would result in a federal due process violation.  Id. at 18, citing Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993).

Salazar fails to show what evidence his purported alibi witnesses would have offered or how the evidence would have been so crucial as to alter the outcome of his trial.  If Salazar contends that he was wrongly denied the right to present his alibi defense testimony, his argument would fail to warrant habeas relief.  Lucas v. Johnson, 132 F.3d 1069, 1079 (5th Cir. 1998).  However, this court has interpreted Salazar's pleadings to raise a claim that he was denied effective assistance of counsel.  (An examination of Salazar's scattered and occasionally undecipherable pleadings is the basis for the divergent readings of his arguments.)

Salazar claims that he notified his attorney about the witnesses but they were not produced.  However, he offers nothing more than mere speculation as to what the witnesses would have

testified to or how their testimony would have altered the outcome of the trial. Consequently, Salazar has failed to show that he is entitled to relief on his claim that he was denied the right to present alibi witnesses, regardless of the legal basis of the argument. <u>Graves v. Cockrell</u>, 351 F.3d 143, 151 (5th Cir. 2003). Salazar's alibi-witnesses claim shall be dismissed because there is no showing that the state court's determination was in conflict with clearly established Supreme Court law or that it "was based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)

## C.   The Indictment

The initial tests made during the investigation of the murder in 1990 were inconclusive. <u>Salazar</u>, 2009 WL 566443 at *2. Consequently, the case was closed and remained so until 2004 when it was reopened by HPD's cold case squad. <u>Id.</u> An indictment was returned against Salazar charging him with capital murder for intentionally and knowingly causing the death of the complainant in the course of committing aggravated sexual assault and kidnaping. <u>Salazar</u>, 2009 WL 566443 at *3. The indictment also charged Salazar with causing the complainant's death by smothering her with either a pillow or an unknown object. (Docket Entry No. 23-3 at 62)

Salazar complains that the indictment is invalid because it included language regarding kidnaping and the weapon exhibited that were not included in a prior indictment on the closed case.

-17-

(Docket Entry No. 1 at 8)   The Texas Court of Criminal Appeals rejected the claim as procedurally barred because it had not been raised on direct appeal.   (Docket Entry No. 23-3 at 20)   Salazar has failed to demonstrate cause and prejudice for the procedural default or how such a ruling would be a miscarriage of justice. Therefore, this claim is subject to dismissal as procedurally barred.   Moore v. Quarterman, 534 F.3d at 463; Bosley, 409 F.3d at 664.

Apart from being procedurally barred, Salazar's challenge to the indictment concerns an alleged violation of state law that is not an appropriate issue for federal habeas relief.   McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994).   When state courts have upheld the validity of the indictment, a federal court will defer to the state court's judgment.   Id. at 69.   Such a claim is not cognizable for federal habeas relief unless the indictment is so defective as to deprive the court of jurisdiction.   Id. at 68.   No such defect has been shown and the Court of Appeals' rejection of the claim forecloses Salazar from challenging his state indictment in this federal habeas proceeding.   Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988).   Therefore, Salazar's challenge to the indictment is subject to dismissal.

## D.   DNA Evidence

Salazar alleges that DNA was used as false evidence against him to obtain the conviction.   (Docket Entry No. 1 at 7)   The Texas

Court of Criminal Appeals rejected this claim because it is based on conclusory allegations and such claims are not cognizable in state post-conviction proceedings. (Docket Entry No. 23-3 at 39-40) To the extent that Salazar's DNA claim was a challenge to the sufficiency of the evidence, the Court of Criminal Appeals held that the claim was procedurally barred. See Ex parte Easter, 615 S.W.2d 719, 721 (Tex. Crim. App. 1986) (petitioner cannot attack sufficiency of the evidence in a post-conviction habeas proceeding), citing Ex parte Smith, 571 S.W.2d 22, 23 (Tex. Crim. App. 1978). The Fifth Circuit has recognized that it is well established in the state courts that a challenge to the sufficiency of the evidence can only be presented on direct appeal in the Texas Courts and cannot be reviewed in a state habeas proceeding. West v. Johnson, 92 F.3d 1385, 1398 n.18 (5th Cir. 1996). Salazar cannot avoid a federal procedural bar because he fails to show that there was cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or that failure to consider his claims will result in a fundamental miscarriage of justice. See Pitts, 122 F.3d at 279. Therefore, this claim is subject to dismissal pursuant to a procedural bar.

With regard to the claim itself, Salazar's challenge to the DNA evidence is a state-law question, and claims involving admission of evidence in violation of state law are not appropriate for § 2254 relief because they do not assert the violation of a

-19-

federal constitutional right.  See Estelle v. McGuire, 112 S.Ct. 475, 480-81 (1991); Weeks v. Scott, 55 F.3d 1059, 1062-62 (5th Cir. 1995) (it is not a federal habeas court's function to review a state's interpretation of its own law).  Regardless of whether the claim is procedurally barred, this court will not reexamine the state courts' determinations on the admission of DNA evidence, which is a state-law question.  Dossett v. Quarterman, 2008 WL 7890005, *6 (W.D. Tex. 2008), citing Goodrum v. Quarterman, 547 F.3d 249, 261 (5th Cir. 2008), citing Estelle v. McGuire.  A due process claim can be established only where the admission of the evidence is shown to be "so unduly prejudicial that it renders the trial fundamentally unfair."  Id. citing Payne v. Tennessee, 111 S.Ct. 2597 (1991).  Salazar has failed to make such a showing, and this claim shall be dismissed.

Based on the above findings and conclusions, the court determines that the petition for a writ of habeas corpus filed in this action should be dismissed because Salazar has failed to demonstrate that he is entitled to federal habeas relief.

## VII.  Salazar's Motions

Salazar has filed several motions in which he seeks to avoid dismissal of his petition.  His primary motion, entitled "Motion w/Grounds for Denying Motion for Summary Judgment" (Docket Entry No. 68), is an answer to the respondent's Motion for Summary Judgment.  As explained above, Salazar points to nothing in the

record that would indicate that he is entitled to relief or that his habeas petition should not be dismissed.  Therefore, the motion will be denied.

In his motion for preliminary injunction (Docket Entry No. 62), Salazar complains about the respondent's alleged falsification of court records.  The motion will be denied because Salazar's statements are conclusory.

Salazar has also filed a Motion for Hearing.  The court will deny the motion (Docket Entry No. 67) because the state courts' findings are adequate for this court to make a determination of the claims without a hearing.  See Baldree v. Johnson, 99 F.3d 659, 661 (5th Cir. 1996).

## VIII.  Certificate of Appealability

Under 28 U.S.C. § 2253 Salazar needs to obtain a certificate of appealability before he can appeal this Memorandum Opinion and Order dismissing his petition.  To obtain a certificate of appealability Salazar must make a substantial showing of the denial of a constitutional right.  Williams v. Puckett, 283 F.3d 272, 276 (5th Cir. 2002).  To make such a showing, Salazar must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.  Lucas v. Johnson, 132 F.3d 1069, 1073 (5th Cir. 1998).  For the reasons stated in this Order, Salazar has not made a substantial

showing of the denial of a constitutional right.  Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996).  The court will deny the issuance of a certificate of appealability.

## IX.  Conclusion

The court **ORDERS** the following:

1.   Respondent's Motion for Summary Judgment (Docket Entry No. 40) is **GRANTED.**

2.   The Petitions for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1 in C.A. No. H-10-177 and Docket Entry No. 1 in C.A. No. H-10-2396) are **DISMISSED with prejudice.**

3.   A Certificate of Appealability is **DENIED.**

4.   All other pending motions (Docket Entry Nos. 62, 67, and 68) are **DENIED.**

**SIGNED** at Houston, Texas, on this 28th day of April, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-22-